J. B. WOOD v. THE STATE.

No. 14081.   Delivered June 10, 1931.

The opinion states the case.

*Ghent Sanderford,* of Eastland, *L. R. Pearson,* of Ranger, and *Frank Sparks,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement; the punishment, confinement in the penitentiary for two years.

M. H. Leventhal, agent of Eureka Vacuum Cleaner Company, had

employed appellant to sell vacuum cleaners. Appellant sold a vacuum cleaner to M. L. Tarver, for which he received a check in the sum of $64.50. Appellant appropriated the proceeds of the check to his own use and benefit. C. W. Dozier, assistant treasurer of the company, testified that he did not give appellant his consent to appropriate the amount of money in question. He further testified that the company owed appellant no money at the time appellant made the sale to M. L. Tarver. The state did not use Leventhal as a witness, it appearing that he was in the state of Louisiana at the time of the trial.

Appellant testified that the vacuum cleaner company owed him $67.00 at the time he appropriated the $64.50 he had reecived from M. L. Tarver. He said that he was to receive $19.00 of the money from the sale as a commission and that the corporation was due him other sums arising out of transactions he had had with it from time to time. He said that Mr. Leventhal told him to take what he needed out of the sales he made until the company paid him what they owed him and that he would withhold from his check for commissions any amount that he might be due the company. We quote appellant's testimony at this point as follows:

"As to whether or not I knew there was a rule that required me to remit those proceeds to the company; Mr. Leventhal told me if I had to have the money to use it and let him know about it. As to whether or not I knew there was a rule that required me to remit those proceeds to the company; we were supposed to until Mr. Leventhal told me this —I knew this was a general rule, yes, sir. Mr. Dozier had never told me otherwise; but I did not know Mr. Dozier until two weeks after I went to work for the company.

We quote further:

"As to whether or not I had the consent of Mr. C. W. Dozier or any person in the Eureka Vacuum Cleaner Company to so appropriate it; I had the permission of Mr. Leventhal, he told me not to starve— I didn't know but what Mr. Dozier was just an 'office boy until January—I had never been in the office until January—I had never been in the office but four times and I had all of my dealings with Mr. Leventhal, he employed me. * * * As to whether or not Mr. Leventhal told me to take that $64.50; he told me to take any of it until they paid me. As to whether or not Mr. Leventhal gave me permission to take the $64.50 that I collected from M. L. Tarver; he told me to take any amount I needed to eat on as long as I kept it straight."

The state offered in evidence a written statement made by appellant to Mr. Dozier wherein appellant stated that he appropriated the money in question. On cross-examination, appellant admitted that he had retained receipts for the sale of vacuum cleaners to other parties, and

that he had been several times indicted for embezzlement and on one occasion for forgery.

Nowhere in the charge did the court submit to the jury the issue raised by appellant's testimony that he had the consent of his employer, Mr. Leventhal, to use the money. Where the accused claims that the injured party gave him the right to use the money or property embezzled the court should submit this defense to the jury. Branch's Ann. P. C., sec. 2614; Henderson v. State, 1 Tex. Crim. App., 437; Pye v. State, 74 Texas Crim. Rep., 322, 171 S. W., 741. In applying the law to the facts, the court nowhere in the charge advised the jury that they must believe from the evidence beyond a reasonable doubt that the property was taken by appellant without the consent of the injured party. It is true that the court instructed the jury that appellant had the right to retain in his hands sufficient funds belonging to his employers to pay such indebtedness as defendant honestly believed was due him by the company. This was one of the defensive matters in evidence, but not the sole defense. Appellant also relied, according to his testimony, upon consent given by his employer, Leventhal, to retain and use such funds in his hands as he deemed necessary to pay his expenses while adjusting his accounts with the company. Appellant not only objected to the court's charge for its failure to submit the affirmative defense touching the consent of his employer to use the money, but also presented a special charge covering the issue. In cases in which an affirmative defensive theory arises from the evidence it is necessary upon proper demand, that an instruction be given to the jury to acquit if they find the defensive theory to be true. Richardson v. State, 106 Texas Crim. Rep., 72, 290 S. W., 1099.

The state elicited from appellant on cross-examination that he had been indicted in several cases charging him with embezzlement. There was also evidence that appellant had been indictd for forgery. Appellant objected to the charge of the court for its failure to limit the testimony touching these indictments to the purpose of impeachment. We see no good reason for the court declining to limit this testimony. Where a defendant becomes a witness in his own behalf and proof is made that he had been or was then charged with other offenses, the better practice is to always limit the testimony to the purpose for which it was admitted. Wakefield v. State, 98 Texas Crim. Rep., 491, 266 S. W., 1097. There are some cases where the accused is shown to have been charged with an offense so dissimilar in character to the one in trial that it would be impossible for the jury to appropriate it for anything but impeachment purposes, and in such cases failure to limit it has been held not reversible. See Carroll v. State (Texas Crim. App.), 58 S. W., 340. Most of the indictments pending against appellant charged him with the same character of offense (embezzlement) for which he

was on trial. Not being informed of the purpose of the indictments, the jury may have concluded that the former charges were indicative of criminal connection with the one then under investigation. If another trial be had, the testimony should be limited.

We disclaim any intention of holding that it was improper for the state to show that appellant had taken money received from sales of vacuum cleaners on occasions other than the one out of which the present indictment grew. In view of the fact that appellant declared that the company owed him more money than he had retained, it would appear that it was proper for the state to show, even though it disclosed other offenses, that at about the same time he appropriated the money in question appellant had retained other sums of money belonging to his employer.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.